17 P.3d 243

**Paul Ezra RHOADES, Petitioner– Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 25436.

Supreme Court of Idaho,
Idaho Falls, May 2000 Term.

Dec. 5, 2000.

Rehearing Denied Feb. 6, 2001.

Nevin, Herzfeld & Benjamin, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. L. LaMont Anderson argued.

SCHROEDER, Justice.

Paul Ezra Rhoades appeals the district court's dismissal of his second petition for post-conviction relief. The State has moved to dismiss the appeal pursuant to Idaho Code Section 19–2719. The motion to dismiss is granted.

# I.

## BACKGROUND AND PRIOR PROCEEDINGS

Evidence at trial indicated that Paul Ezra Rhoades (Rhoades) kidnapped twenty-one-year-old Stacy Baldwin from the Mini Barn convenience store in Blackfoot, Idaho, on February 28, 1987. He drove her to a secluded area near the Snake River and shot her multiple times when she resisted his attack and attempted to escape. One of the bullets pierced her lungs, and she died about one hour after he left her in the snow.

Rhoades was arrested in Nevada after he drove his car into the median of a freeway. A pistol that dropped from his car was later identified by a ballistics expert as the murder weapon. Rhoades confessed to Idaho officers, but he subsequently denied any involvement, claiming he was not at the scene of the murder. A jury convicted Rhoades of first degree murder, kidnapping in the first degree, robbery, and the use of a firearm in the commission of murder, robbery and kidnapping.

This Court denied Rhoades' first post-conviction petition for relief in *State v. Rhoades,* 120 Idaho 795, 820 P.2d 665 (1991). He disputes the convictions for the second time in this post-conviction review proceeding. He alleges that new evidence has come to light since the time of the first post-conviction proceeding which was not known, or could not reasonably have been known at the time the first post-conviction petition was filed.

Rhoades makes nine claims: (1) the State withheld exculpatory evidence; (2) new evidence established that statements made by Rhoades were obtained in violation of his *Miranda* rights; (3) new evidence established that David Holm was acting as a state agent when Rhoades made statements to Holm while both were in the same jail cell; (4) new evidence established "prosecutorial intrusion" of attorney-client privilege and work product; (5) new evidence showed that county financing of capital cases results in

arbitrary and capricious sentences; (6) he was deprived of effective assistance of counsel; (7) there was prosecutorial misconduct; (8) he was deprived of the right to present evidence; and (9) there were illegal firearms enhancements.[1]

The district court denied Rhoades' second post-conviction relief petition, noting that it could dismiss his claims on procedural grounds alone, but that even if the petition were timely Rhoades would not be entitled to relief. Rhoades appealed the district court ruling, and the case is before this Court upon the State's motion to dismiss the appeal.

# II.

## STANDARD OF REVIEW

 Post-conviction proceedings are civil in nature. Idaho Criminal Rule 57(b); *Pizzuto v. State,* 127 Idaho 469, 470, 903 P.2d 58, 59 (1995). Summary dismissal of a petition for post-conviction relief is the procedural equivalent of summary judgment under I.R.C.P. 56. *Small v. State,* 132 Idaho 327, 330, 971 P.2d 1151, 1154 (Ct.App.1998). On review of a dismissal of a post-conviction relief application without an evidentiary hearing, this Court must determine whether a genuine issue of material fact exists based on the pleadings, depositions and admissions together with any affidavits on file. *Small,* 132 Idaho at 331, 971 P.2d at 1155. Inferences are liberally construed in favor of the nonmoving party. *Id.*

 Whether evidence is material for purposes of due process analysis is a question of law, over which appellate courts exercise free review. *State v. Dopp,* 129 Idaho 597, 606, 930 P.2d 1039, 1048 (Ct.App.1996). Whether this Court has jurisdiction to hear a claim is a question of law which can be raised at any time. *Pizzuto,* 127 Idaho at 471, 903 P.2d at 60.

Issues which should have been but were not raised on direct appeal are forfeited, "unless it appears to the court ... that the asserted basis for relief raises a substantial

---

1. The claim regarding illegal firearms enhancements was later dropped and formed the basis of a separate action, litigated in *State v. Rhoades,*

134 Idaho 862, 11 P.3d 481 (2000), rehearing denied October 24, 2000.

doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier." I.C. § 19–4901(b).

## III.

## RHOADES' CLAIMS WERE NOT BROUGHT WITHIN A REASONABLE AMOUNT OF TIME AFTER THE DISCOVERY OF NEW EVIDENCE AND IN MOST INSTANCES WERE KNOWN OR REASONABLY KNOWABLE WITHIN FORTY-TWO DAYS OF THE FILING OF THE JUDGMENT.

■ Idaho Code Section 19–2719 provides for post-conviction relief if a petition is filed within forty-two days after entry of judgment. A petition filed after this forty-two day time period will not be considered unless it can be demonstrated that the issues raised "were not known or could not reasonably have been known within the 42–day time frame." *McKinney v. State*, 133 Idaho 695, 701, 992 P.2d 144, 150 (1999). Petitions are procedurally-barred when they are not timely brought under I.C. § 19–2719. *McKinney*, 133 Idaho at 700, 992 P.2d at 149.

The district court found that Rhoades' evidentiary claims were time-barred. There are two bases to conclude that this is correct.

### A. The Claims Were Not Brought Within a Reasonable Time Following Discovery.

■ The State argues that I.C. § 19–2719(4), together with § 19–2719(3), bars Rhoades' claims because they were not brought within forty-two days after they were known. There is logic to this position, but it is not necessary to determine in this case whether the forty-two day time limit is applicable. Counsel for Rhoades states, and the record reflects, that none of the claims was brought earlier than six months from the time the claim was known. Some were brought well after that time.

■ In prior cases the Court has applied a reasonable time standard in determining if a successive petition was timely. In *Paz v.*

*State*, 123 Idaho 758, 760, 852 P.2d 1355, 1357 (1993), the Court determined that four years was not a reasonable time to bring claims after they were known. "Claims not known or which could not have reasonably been known within 42 days of judgment must be asserted within a reasonable time after they are known or reasonably could have been known." *Paradis v. State*, 128 Idaho 223, 227, 912 P.2d 110, 114 (1996). In *Dunlap v. State*, 131 Idaho 576, 577, 961 P.2d 1179, 1180 (1998), the Court determined that Dunlap did not know and reasonably could not have known that his prior counsel had not filed a petition for post-conviction relief. Consequently, a petition filed within forty-two days after the appointment of new counsel was filed within a reasonable time. The reference to the forty-two day time limit in *Dunlap* supports the State's position that a successive petition must be filed within forty-two days of the time the claim is known or reasonably knowable. Regardless, that precise question is not necessary to resolve in this case.

In *McKinney v. State*, the Court observed "that the legislature instituted the procedures of I.C. § 19–2719 'to accomplish the purpose of eliminating unnecessary delay in carrying out a valid death sentence.'" *McKinney*, 133 Idaho at 705, 992 P.2d at 154. Rhoades has not shown a justifiable reason for the six-month delay in filing.

All claims made in Rhoades' successive petition for post-conviction relief are barred for failure to bring them within a reasonable time after they were discovered.

### B. The Individual Claims

#### 1. The videotape (withholding of exculpatory evidence by the State)

Rhoades claims that the State withheld a video-taped interview of an eyewitness to the kidnapping who described a person quite different from Rhoades. Prior to trial the prosecutor provided counsel for Rhoades a videotape of the crime scene without identifying the fact that there was other information on the tape. There were approximately three minutes of static between the crime scene and an interview with a person who claimed

to be an eyewitness to the kidnapping. Counsel for Rhoades did not fast-forward the tape and discover the interview prior to trial. New defense counsel discovered the potentially exculpatory interview in December of 1995 by accident. The second petition for post-conviction relief was not filed until November of 1996, nearly a year later after discovery of the evidence. The claim was not brought within a reasonable time following discovery.

### 2. Alleged *Miranda* violations

Rhoades made two inculpatory "I did it" statements after he was apprehended by the police. Rhoades now argues that a newly discovered police report proves that these statements were admitted in violation of *Miranda*. As to the first admission, the evidence may not be properly characterized as newly discovered evidence because there was evidence at trial that *Miranda* violations occurred at the time of Rhoades' arrest. Officer Dan Miller testified at trial that he saw Idaho officers Rodriguez and Shaw questioning Rhoades before he made his first "I did it" statement.

Rhoades maintains that a police report by Detective Shaw which indicated that a *Miranda* violation occurred related to the second "I did it" statement was not disclosed until Detective Shaw's deposition was taken March 21, 1996. Subsequently, on May 3, 1996, the deposition of prior defense counsel was taken. The police report dealt with another murder, but there was information concerning the interrogation of Rhoades relevant to the Baldwin killing. This report was reasonably discoverable prior to the filing of the first petition for post-conviction relief. At the trial concerning Baldwin's killing, Detective Shaw was questioned concerning a police report. He commented, "there are more reports than that." The defense was put on notice to explore further the existence of police reports. Reasonable diligence would have led to the discovery of the information within the time for filing the first petition for post-conviction review.

Assuming current defense counsel could not know of the police report until the prior defense counsel was deposed, the report was discoverable May 3, 1996. The second petition for post-conviction review was not filed until November 6, 1996. This claim was not filed within a reasonable time following discovery.

### 3. Holm's testimony

Rhoades alleges that new evidence demonstrated that David Holm was acting as a jailhouse "snitch" when he testified against Rhoades at trial. Holm's status as a jailhouse informant was well known at trial and was litigated in the first post-conviction proceeding. The Court will not address this issue for a second time when the "new" evidence adds nothing to that which was already known.

### 4. Prosecutorial intrusion of attorney-client privilege

Ned Stuart, an employee with the state forensic laboratory, replaced the defense ballistics expert when the expert was unable to testify. Stuart sent his test results to the Bingham County Sheriff's Office. The Sheriff's office sent the original to the prosecutor and a copy to the defense. Rhoades claims that this action on the part of Stuart, and the State's subsequent threat to use the test results, effectively denied Rhoades his right to a defense expert. The basis of this claim, the defense expert's affiliation with the State, was known at the time the original post-conviction motion was filed; therefore, it is not a new claim.

### 5. County financing in capital cases

Rhoades argues that new evidence shows that county financing of capital cases results in arbitrary and capricious death sentences; however, no new evidence exists on this point. In *State v. Hairston*, 133 Idaho 496, 988 P.2d 1170 (1999), this Court rejected the same argument Rhoades makes here. The Court will not revisit this argument.

### 6. Buchholz's mental history

Ken Buchholz confessed to the murder of Stacy Baldwin, but the confession was kept from the jury. Rhoades submits that Buchholz's mental history and criminal back-

ground should have been disclosed to the defense and that such information first became available to the defense on February 22, 1996. Buchholz's mental history was discoverable prior to trial.

### 7. Ineffective assistance of counsel

Rhoades delineates numerous shortcomings on the part of his defense counsel at trial, including: arguing the insanity defense, which was not available under the law, failing to affirmatively request that the death penalty not be imposed, sending unsealed copies of status reports to the Bingham County Court file, failing to call an important medical witness and failing to object to a reasonable doubt instruction which said that the presumption of innocence is not designed to protect the guilty.

Rhoades' current counsel was appointed on October 30, 1995. Over one year's period of time elapsed before Rhoades' petition alleging ineffective of trial counsel was filed. This claim was not filed within a reasonable time.

### 8. Prosecutorial misconduct

Rhoades alleges that the prosecutor knowingly misrepresented an important fact to the trial court regarding the types of shell casings that had been found at the scene of the crime. The result of this misrepresentation, according to Rhoades, was that Buchholz's confession was excluded. Rhoades alleges that the prosecutor committed further misconduct in representing to the court that a polygraph test cleared Buchholz of the Baldwin murder, when in fact, the polygraph was administered for the Michelbacher murder and Buchholz did not pass.

This claim was filed six months after Rhoades' current counsel discovered the alleged violation. This is not a reasonable time.

### 9. Defendant's right to present evidence

The trial court ruled that Rhoades would not be allowed to present Buchholz's confession. Rhoades claims that by not allowing him to present the evidence of another individual's confession, the trial court denied him due process. This claim was known at the time Rhoades' first petition for post-conviction relief was filed. Since Rhoades did not bring this claim at the time of the filing of the first post-conviction petition for relief, he has waived the claim pursuant to I.C. § 19–2719. In any event, the claim was not filed within a reasonable time following appointment of new counsel.

## IV.

## CONCLUSION

The appeal from the district court's decision is dismissed.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.

